UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

TAMMY L. O.[1],

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

CASE NO. 3:21-CV-159-MGG

**OPINION AND ORDER**

Plaintiff Tammy L. O. ("Ms. O") seeks judicial review of the Social Security Commissioner's decision denying Ms. O's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"). This Court may enter a ruling based on the parties' consent pursuant to 28 U.S.C. § 636(c)(1) and 42 U.S.C. § 405(g). [*See* DE 9]. For the reasons discussed below, the Court **REMANDS** the Commissioner's decision.

**I.**     **OVERVIEW OF THE CASE**

Ms. O filed her application for DIB on November 16, 2017, alleging a disability onset date of August 11, 2017. Ms. O's applications were denied initially on February 9, 2018, and upon reconsideration on October 26, 2018. Following a video hearing on September 13, 2019, an Administrative Law Judge ("ALJ") issued a decision on January 30, 2020, which affirmed the Social Security Administration's ("SSA's") denial of

---

[1] To protect privacy interests, and consistent with the recommendation of the Judicial Conference, the Court refers to the plaintiff by first name, middle initial, and last initial only.

benefits. The ALJ's decision became the final decision of the Commissioner when the SSA Appeals Council declined review on December 23, 2020. *See Fast v. Barnhart*, 397 F.3d 468, 470 (7th Cir. 2005).

Ms. O sought judicial review of the Commissioner's decision on March 4, 2021. Ms. O filed her opening brief on January 1, 2022, and the Commissioner filed her Memorandum in Support of Decision on March 22, 2022. This matter became ripe on April 6, 2022, when Ms. O filed her reply.

## II. APPLICABLE STANDARDS

### A.   Disability Standard

To qualify for DIB, a claimant must be "disabled" as defined under the Act. A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Substantial gainful activity ("SGA") is defined as work activity that involves significant physical or mental activities done for pay or profit. 20 C.F.R. § 404.1572.

The Commissioner's five-step sequential inquiry in evaluating claims for DIB and SSI under the Act includes determinations of: (1) whether the claimant is engaged in SGA; (2) whether the claimant's impairments are severe; (3) whether any of the claimant's impairments, alone or in combination, meet or equal one of the Listings in Appendix 1 to Subpart P of Part 404; (4) whether the claimant can perform her past relevant work based on her residual functional capacity ("RFC"); and, if not, (5)

whether the claimant is able to perform other work. 20 C.F.R. §§ 404.1520; 416.920.[2] The claimant bears the burden of proof at every step except Step Five, where the burden shifts to the Commissioner. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000).

### B.     Standard of Review

This Court reviews disability decisions by the Commissioner pursuant to 42 U.S.C. § 405(g). But this Court's role in reviewing social security cases is limited. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). The question on judicial review is not whether the claimant is disabled; the Court considers whether the ALJ used "the correct legal standards and [whether] the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2007).

The Court must uphold the ALJ's decision so long as it is supported by substantial evidence. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (citing *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009)). Substantial evidence is "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Substantial evidence has also been understood as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017). The Supreme Court has also noted that "substantial evidence" is a term of art in administrative law, and that "whatever the meaning of 'substantial' in other contexts,

---

[2] Regulations governing applications for DIB and SSI are almost identical and are found at 20 C.F.R. § 404 and 20 C.F.R. § 416 respectively. Going forward, this Opinion and Order will only refer to 20 C.F.R. § 404 unless explicit distinction between the DIB and SSI regulations is necessary.

3

the threshold for such evidentiary sufficiency is not high" in social security appeals. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The Court reviews the entire administrative record to determine whether substantial evidence exists, but it may not reconsider facts, reweigh the evidence, resolve conflicts of evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Accordingly, at a minimum, the ALJ must articulate his analysis of the record to allow the reviewing court to trace the path of his reasoning and to be assured the ALJ has considered the important evidence in the record. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ need not address every piece of evidence in the record so long as he provides a glimpse into the reasoning behind his analysis to build the requisite "logical bridge" from the evidence to his conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008).

On the other hand, an ALJ's decision cannot stand if it lacks evidentiary support or inadequately discusses the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). "The ALJ must confront the evidence that does not support his conclusion and support why that evidence was rejected." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). An ALJ's decision will lack sufficient evidentiary support and require remand if the ALJ "cherry-picked" the record to support a finding of non-disability. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010); *see also Wilson v. Colvin*, 48 F. Supp. 3d 1140, 1147 (N.D. Ill. 2014).

If the ALJ's decision is not supported by substantial evidence, remand is typically appropriate. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

"An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

### III.   ANALYSIS

#### A.   The ALJ's Decision

Ms. O's video hearing before an ALJ on her application for DIB took place on September 13, 2019. On January 30, 2020, the ALJ issued a written decision finding that Ms. O was not disabled, conducting the requisite five-step analysis for evaluating claims for disability benefits. 20 C.F.R. §404.1520.

At Step One, an ALJ's inquiry focuses on whether a claimant is engaging in substantial gainful activity. The ALJ determined that Ms. O had not engaged in substantial gainful activity since her alleged onset date of August 11, 2017—the day after Ms. O broke her left foot.

At Step Two, an ALJ's inquiry focuses on whether a claimant's impairments are severe. For an impairment to be considered severe, an impairment or combination of impairments must significantly limit the claimant's ability to perform basic work-related activities. 20 C.F.R. § 404.1521. The ALJ found that Ms. O suffers from the following severe impairments: obesity, fracture of left metatarsal, bilateral knee osteoarthritis, lumbar radiculopathy, degenerative disc disease, and right shoulder bursitis/tendonitis. On the other hand, an impairment is considered non-severe when the medical evidence establishes only a slight abnormality or combination of slight abnormalities that would have no more than a minimal effect on the claimant's ability

5

to perform basic work functions. *See, e.g.*, 20 C.F.R. § 404.1522; S.S.R. 85-28, 1985 WL 56856 (Jan. 1, 1985). The ALJ found that Ms. O had the following non-severe medically determinable impairments: diabetes mellitus, presbyopia, left shoulder rotator cuff tendonitis, irritable bowel syndrome, gastroesophageal reflux disease (GERD) with Barrett esophagus, mild gastritis, xerostomia, urinary tract infection (UTI), goiter, hypothyroidism, diverticulitis, hiatal hernia, splenic aneurysm, transaminitis, steatohepatitis, and obstructive sleep apnea. Lastly, the ALJ found that Ms. O's allegations of fibromyalgia, neuropathy, and contraction of visual field were not medically determinable impairments.

At Step Three, the ALJ found that none of Ms. O's severe impairments, nor any combination of her impairments, met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ considered listings 1.02 and Social Security Ruling ("SSR") 19-2p. Accordingly, before moving on to Step Four, the ALJ proceeded to determine whether Ms. O can perform her past relevant work based on her residual functional capacity ("RFC").

A claimant's RFC includes limitations for all medically determinable impairments, including non-severe impairments. 20 C.F.R. § 404.1545(a)(2). The RFC is the most that an individual can do despite her limitations. 20 C.F.R. § 404.1545(a). To determine a claimant's RFC, the ALJ must consider the claimant's symptoms, their intensity, persistence, and limiting effects, and the consistency of these symptoms with the objective medical evidence and other evidence in the record. 20 C.F.R. § 404.1545(a)(1). Physical exertion levels in an RFC are classified as either sedentary, light,

6

medium, heavy, or very heavy. 20 C.F.R. § 404.1567. The ALJ found that Ms. O had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) with additional limitations:

> except the claimant can never climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs, balance, stoop, crouch, kneel, and crawl. She can occasionally reach overhead with her right non-dominant upper extremity. She can have occasional exposure to wet or slippery walking surfaces or unprotected heights. She is limited to work that does not require driving motor vehicles as part of job duties. She is limited to work that does not require more than occasional bilateral peripheral vision and/or acuity. She is limited to understanding, remembering, and carrying out work that consists of no more than simple and routine tasks. She is limited to work free of fast-paced or timed piece-rate production work. She can meet end of day goals.

[DE 15 at 29-30; AR 24-25]. Based on this RFC, at Step Four, the ALJ found that Ms. O was unable to perform her past relevant work as a kitchen helper, hospital cleaner, and cashier. Accordingly, the ALJ moved on to the last step in the five-step sequential analysis.

At Step Five, while the burden of proof shifts to the Commissioner, the Commissioner need only show that the claimant can perform some type of substantial gainful work existing in the national economy in significant numbers. 42 U.S.C. § 423(d)(2)(A). ALJs typically enlist a vocational expert ("VE") to testify about which occupations, if any, a claimant can perform. *See* S.S.R. 83-12, 1983 WL 31253, at *2 (Jan. 1, 1983). VEs use information from the Dictionary of Occupational Titles ("DOT") to inform their assessments of a claimant's ability to perform certain types of work. S.S.R. 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000). The VE, using the DOT, identified three jobs that Ms. O could still perform with her RFC—call out operator, food and beverage

7

order clerk, and addresser—which, respectively, have 41,000 jobs nationally, 15,400 jobs nationally, and 12,600 jobs nationally (69,000 jobs total).[3]

Finding that Ms. O could make an adjustment to other work that existed in significant numbers, the ALJ determined that Ms. O was not under a disability, as defined in the Act, from her alleged onset date of August 11, 2017, through the date of ALJ's decision on January 30, 2020.

**B.     Issues for Review**

Ms. O contends that remand is required because the ALJ's "decision repeatedly fails to explain how and why a conclusion is supported beyond simply insisting that it is." [DE 23 at 8]. Ms. O contends that the ALJ's RFC limitations fail to address all of her

---

[3] As stated, in identifying these three representative jobs, the ALJ relied on the testimony of the vocational expert who testified that Ms. O can perform the named jobs as classified in the Dictionary of Occupational Titles ("DOT"). [DE 15 at 39]. The Employment and Training Administration ("ETA") of the U.S. Department of Labor created the DOT, which has not been updated since 1991. The ETA has since replaced the DOT with the O*Net, but SSA continues to use the DOT for disability determinations. This Court and other courts have observed that the occupations listed in the DOT are superannuated and, in many cases, antiquated if not obsolete. *See, e.g.*, *Pamela H. v. Kijakazi,* No. 5:20-cv-00304, 2021 WL 4307457, at *6 (N.D.N.Y. Sept. 22, 2021) ("DOT definitions . . . are comically out of date."); *Karla J. v. Kijakazi,* No. 3:20-CV-1051-MGG, 2022 WL 4463347, at *5 (N.D. Ind. Sept. 26, 2022) (DOT "fails to account for minor recent inventions such as the computer and the internet" (citing *Pamela H.*, 2021 WL 4307457, at *6)); *Gass v. Kijakazi,* No. 1:19-cv-404-TLS, 2021 WL 5446734, at *8 (N.D. Ind. Nov. 22, 2021). As the number of buggy whip factory jobs has declined since the advent of the automobile, many jobs listed in the DOT no longer exist in significant numbers in the national or regional economies. The continued reliance on the DOT by the Commissioner is unsustainable, especially on the cusp of a large-scale upsurge in jobs using artificial intelligence. Continued use of occupational titles that are more than thirty years old is a grave disservice to DIB and SSI applicants and results in the unnecessary use of judicial resources as courts engage in legal contortions to review administrative decisions based on anachronistic listings. Previously, the Commissioner had announced that the DOT would be replaced with a revised "Occupational Information System" by 2020, but the roll-out of the OIS has not come to fruition. The continued failure of the Commissioner to create an administrative record based on current occupational listings is cause for great concern and may have increasingly negative ramifications in social security appeals moving forward. Thus, the undersigned encourages the Commissioner to adopt the O*Net, the OIS, or another up-to-date occupational listing for use in making Step 5 determinations. Thus, while the scope of the Court's limited review constrains it from finding that the three jobs identified for Ms. O warrant remand, the Court remains concerned about the antiquated nature of the jobs identified for Ms. O.

severe impairments; that the RFC disregards the combined effects of her impairments; that the RFC fails to provide the requisite logical bridge between the evidence and certain limitations; and that the decision fails to adequately explain how certain limitations in the RFC account for certain symptoms. Ms. O discusses several examples of these errors in her opening brief.[4] In response, the Commissioner contends that the ALJ's RFC finding is supported by substantial evidence and that, although Ms. O "attempts to poke holes in the ALJ's decision, [she does so] without identifying limitations that are supported by the record and would accommodate her impairments." [DE 26 at 7].

To begin, the ALJ's decision does include a long overview of Ms. O's medical records and subjective symptom reports. But the Court's review turns on whether the ALJ adequately explained why certain accommodations were included in the RFC. Despite the ALJ's detailed summary of the evidence, the decision fails to adequately explain how and why the ALJ's conclusions as to certain RFC limitations are supported. *See John L. v. Saul*, No. 4:19CV18, 2020 WL 401887, at *12 (N.D. Ind. Jan. 23, 2020) (stating that "summarizing the evidence is not a substitute for analysis"); *see also Smith v. Astrue*, No. 09 C 6210, 2011 WL 722539, at *12 (N.D. Ill. Feb. 22, 2011) ("cataloguing [evidence

---

[4] Ms. O points to these examples to illustrate the errors she contends are present in the decision: the ALJ's conclusion that Ms. O did not require a cane/assistive device and the ALJ's failure to explain how Ms. O could perform the identified jobs while standing and walking with a cane; the ALJ's conclusion that Ms. O's diarrhea, diabetes, and gastrointestinal symptoms were non-severe and the ALJ's subsequent failure to include restroom breaks at-will in the RFC or to consider time off task for bathroom breaks; the ALJ's finding that Ms. O's fibromyalgia and neuropathy were not medically determinable impairments and subsequent failure to include limitations for these impairments; the RFC's failure to adequately account for Ms. O's obesity and sleep apnea and subsequent failure to account for the combined effects of these impairments; and the ALJ's failure to address Ms. O's ability to work on a regular and continuing basis.

9

from the record] is no substitute for analysis or explanation"). Although Ms. O raises several issues in support of remand, the Court limits the discussion to one. Finding that the ALJ's decision failed to adequately explain how certain RFC limitations accounted for the combined effects of Ms. O's obesity with her sleep apnea as well as Ms. O's right shoulder bursitis/tendonitis, remand is required.

C.    **Discussion**

An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.* The RFC is the *most* someone "can do despite their mental and physical limitations." 20 C.F.R. § 404.1545(a)(1) and § 416.945(a)(1); SSR 96-8p(5) (emphasis added). The RFC is crafted based on "all the relevant evidence in the case record, including information about the individual's symptoms and any 'medical source statements' – i.e., opinions about what the individual can still do despite his or her impairment(s) – submitted by an individual's treating source or other acceptable medical sources." SSR 96-8p.

When crafting a claimant's RFC, an ALJ must follow a two-step sequential process to determine whether a claimant's symptoms can be accepted as consistent with objective medical evidence and other evidence. First, the ALJ must determine whether there are underlying medically determinable mental or physical impairments that could reasonably be expected to produce the claimant's pain or symptoms. Second, if there are underlying physical or mental impairment(s) that could reasonably be expected to

produce the claimant's pain or other symptoms, the ALJ must then evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities. *See* 20 C.F.R. § 416.929(a). The ALJ evaluates the intensity, persistence, and limiting effects of symptoms by considering a claimant's subjective statements and complaints related to their symptoms and pain, as well as any description medical sources and other nonmedical sources provide about how these symptoms affect a claimant's ability to work. *See* 20 C.F.R. § 404.1529(a).

The ALJ must also consider "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [a claimant's] statements and the rest of the evidence . . . " 20 C.F.R. § 404.1529(c)(4). Accordingly, a claimant's alleged symptoms are determined to diminish their capacity to work "to extent that [the claimant's] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical and other evidence." 20 C.F.R. § 404.1529(c)(4).

The "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts." S.S.R. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). This "analysis must say enough to enable a review of whether the ALJ considered the totality of a claimant's limitations." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021).

Ms. O challenges the ALJ's discussion of obesity in the decision, contending that the ALJ's RFC assessment fails to "demonstrate meaningful attribution of additional

11

limiting effects caused by obesity as discussed by SSR 19-2p" and fails to mention her sleep apnea. [DE 23 at 19]. In response, the Commissioner contends that the ALJ provided a "reasonable and fulsome discussion" of Ms. O's obesity combined with her sleep apnea and other impairments and that Ms. O has failed to present evidence to contradict the ALJ's conclusions. [DE 26 at 10]. The Commissioner likewise contends that the ALJ "properly considered Ms. O's complaints of constitutional symptoms, such as fatigue, balance difficulties, and pain." [*Id.* at 13].

SSR 19-2p "provide[s] guidance on how [the Commissioner] . . . evaluates obesity in disability claims." S.S.R. 19-2p, 2019 WL 2374244, at *1 (May 20, 2019). The ruling recognizes that "[p]eople with obesity have a higher risk for other impairments, and the effects of obesity combined with other impairments can be greater than the effects of each of the impairments considered separately." *Id.* at *2. SSR 19-2p also specifically addresses sleep apnea: "[i]n cases involving obesity, fatigue may affect the person's physical and mental ability to sustain work activity. This may be particularly true in cases involving sleep apnea." *Id.* at *4.

The ALJ found that Ms. O's obesity was a severe impairment at Step Two. As part of the ALJ's summary of Ms. O's medical records and treatment history, the ALJ noted instances where medical providers recorded Ms. O's body mass index (BMI), reflecting that her BMI had been recorded at a range of 43-48 between June 2018 and June 2019. [DE 15 at 23-25]. The ALJ also addressed Ms. O's obesity as part of the discussion of the persuasiveness of the medical opinion evidence. The ALJ explained that she found the state agency consultants' medical opinions persuasive through the

12

date they were given because these opinions addressed Ms. O's obesity: "[t]heir opinions are supportable because they considered [Ms. O's] fifth metatarsal fracture, mild knee degeneration, and obesity." [*Id.* at 36]. The ALJ's RFC assessment further acknowledged that Ms. O's obesity combined with her severe impairments of left fifth metatarsal fracture and mild bilateral knee osteoarthritis "would be problematic in terms of her postural maneuvers and lifting abilities." [*Id.* at 37]. The ALJ then assessed limitations, including a limitation to sedentary work, as well as occasional balancing, stooping, crouching, kneeling, and crawling. [*Id.*]. This discussion, though brief, does appear to consider the effects of Ms. O's obesity as combined with her severe impairments of fifth metatarsal fracture and mild knee degeneration.

Still, Ms. O contends that the decision fails to consider Ms. O's sleep apnea in the RFC, ignoring the guidance in SSR 19-2p. The ALJ found that Ms. O's obstructive sleep apnea was a nonsevere impairment at Step Two because Ms. O "frequently denied fatigue." [DE 15 at 25, citing to Exhibits 19F/15, 20F/14, 25, 22F/27, 24/27 and 26F/1]. But the ALJ also noted instances where Ms. O reported that she was tired, that she had poor sleep, that her sleep apnea interferes with her sleep, as well as Ms. O's statement that she slept a lot, but her sleep was disrupted because of pain. [*Id.* at 26, 30, 33]. The ALJ noted that Ms. O's husband similarly reported that Ms. O has trouble sleeping. [*Id.* at 31].

Despite noting instances where Ms. O denied fatigue as well as instances where she reported fatigue or sleep issues, the ALJ's decision does not explain why Ms. O's complaints of sleeplessness due to apnea and pain are less persuasive than the times she

13

denied experiencing fatigue. Although the Commissioner contends that the ALJ considered these contradictory statements, the ALJ never addressed these as contradictory or otherwise resolved the conflicting evidence within her decision. This places this Court in the position of speculating about the ALJ's findings.

The Commissioner also contends that the ALJ considered Ms. O's "limited use of treatment" for sleep apnea in the decision, referencing the ALJ's citation to a record where Ms. O reported that she did not use her CPAP machine because of discomfort. [DE 26 at 11]. But beyond a mere citation, the ALJ never discussed Ms. O's CPAP usage in the decision, nor did the ALJ explain that her limited use of this treatment was part of the basis for finding that Ms. O's sleep apnea was nonsevere. Again, the Court is left to speculate about the ALJ's rationale.

It is well established that the Court may only review the analysis presented by the ALJ and cannot base its review on the Commissioner's explanation of the decision. *See, e.g.*, *Phillips v. Astrue*, 413 F. App'x 878, 883-84 (7th Cir. 2010) ("We confine our review to the reasons offered by the ALJ and will not consider post-hoc rationalizations that the Commissioner provides to supplement the ALJ's assessment of the evidence."); *see also Villano v. Astrue*, No. 2:07 CV 187, 2009 WL 1803131, at *3 (N.D. Ind. June 23, 2009) (Commissioner's position limited to the ALJ's written decision, especially with respect to the required bridge between facts and conclusions, thus prohibiting post-hoc rationalization); *Golembiewski v. Barnhart*, 322 F.3d 912, 916 (7th Cir. 2003) (finding that the Commissioner's arguments failed because the Commissioner advanced grounds in

14

support of the decision that were not given by ALJ and relied on facts not discussed by the ALJ). Without more, the Court cannot trace the path of the ALJ's reasoning.

The Commissioner also contends that the ALJ properly considered Ms. O "complaints of constitutional symptoms, such as fatigue." [DE 26 at 13]. It is true that the ALJ did account for fatigue in the RFC. Notably, despite finding that Ms. O's sleep apnea was nonsevere because Ms. O often denied symptoms of fatigue, the ALJ's RFC discussion later acknowledges that "some of [Ms. O's] impairments cause fatigue and that [Ms. O] has some trouble with concentration due to depression and pain." [DE 15 at 37]. To accommodate her fatigue and concentration difficulties, the ALJ limited Ms. O to "understanding, remembering, and carrying out work that consists of no more than simple and routine tasks. She is limited to work free of fast-paced or timed piece-rate production work. She can meet end of day goals." [*Id.*].

This accommodation for fatigue in the RFC exposes further gaps in the analysis. The ALJ provides no explanation or evidence as to how limitations to simple and routine tasks or to work free of fast-paced or time piece-rate work accommodate Ms. O's fatigue. What's more, courts have routinely found that such limitations do not adequately account for a claimant's fatigue. *See Allensworth v. Colvin*, 814 F.3d 831, 835 (7th Cir. 2016) (remanding where an ALJ restricted "the plaintiff to simple work because of his sleep apnea, but did not explain why someone with hypersomnia should be able to stay awake at work just because it's simple work"). *See also Thompson v. Saul,* No. 2:20-CV-114 DRL, 2021 WL 2660223 (N.D. Ind. June 29, 2021) ("Although the ALJ limited Ms. Thompson to simple work and few social interactions, she didn't explain

15

why these limitations would accommodate Ms. Thompson's fatigue.); *and Stroud v. Berryhill*, No. 2:17-CV-00067, 2018 WL 4501674, at *6 (N.D. Ind. Sept. 19, 2018) ("However, there is no evidence that limiting the Plaintiff to simple, routine, and repetitive tasks would address the Plaintiff's fatigue issues and the Plaintiff's argument that her fatigue would affect her ability to work"). The Court is unable to discern why the ALJ believed that simple and routine tasks or work free of fast-paced or time piece rate production work accommodates Ms. O's fatigue. Without more, the Court cannot find that the ALJ properly considered Ms. O's sleep apnea or fatigue. "[T]he ALJ has to explain her decision, whether it's to reject claims of fatigue or to accept them and account for them – logically – in her RFC finding." *Lopez v. Berryhill*, 340 F. Supp. 3d 696, 701 (N.D. Ill. 2018).

SSR 19-2p also acknowledges that obesity "increases stress on weight-bearing joints and may contribute to limitation of the range of motion of the skeletal spine and extremities." S.S.R. 19-2p, 2019 WL 2374244, at *4 (May 20, 2019). RFC limitations pertaining to Ms. O's right shoulder bursitis/tendonitis also reveal gaps in the analysis. Notably, the ALJ found that Ms. O's right shoulder bursitis/tendonitis was a severe impairment. The ALJ later explained that the medical opinions from the state agency consultants were only persuasive through the date given because evidence submitted after their review revealed further limitations:

> their opinions are not generally consistent with the longitudinal evidence because later evidence showed that [Ms. O] had some right arm strength and range of motion limitations . . . .Therefore, the undersigned finds their opinions persuasive through the date given; however, [Ms. O] is limited to sedentary work with additional limitations for the right arm . . . .

16

[DE 15 at 36]. The ALJ then accommodated for Ms. O's reduced strength and range of motion limitations by limiting her to "only occasional[5] reaching overhead [with her right non-dominant upper extremity]." [DE 15 at 29, 37]. But the ALJ did not explain how she came up with this limitation or how this limitation accommodates Ms. O's shoulder pain and reduced range of motion. What's more, courts have found that "if a claimant is limited to a certain degree of motion, the ALJ does not appropriately accommodate the claimant by providing durational limitations." *Stroud*, 2018 WL 4501674, at *4 (internal citations omitted). *See also Gaines v. Astrue*, 782 F. Supp. 2d 696, 701 (S.D. Ind. 2011) (finding that an "ALJ did not explain in his decision why he concluded that [the claimant] could stoop occasionally despite the limited lumbar forward flexion found by two physicians"). Without more, the Court cannot trace the path of the ALJ's reasoning regarding how this assessed limitation addresses Ms. O's range of motion limitations in her right upper extremity.

The Commissioner also disputes Ms. O's general arguments in support of remand by maintaining that Ms. O fails to identify other "limitations that are supported by the record and would accommodate her impairments." [DE 26 at 7]. While the claimant must present evidence of any medically determinable impairments, the ALJ bears responsibility for crafting a claimant's RFC limitations. *See Robert P. v. Kijakazi*, No. 3:21CV305, 2022 WL 831870, at *10 (N.D. Ind. Mar. 21, 2022) (explaining that the claimant was not required to "to furnish direct evidence that his impairments, for

---

[5] "'Occasionally' means occurring from very little up to one-third of time." S.S.R. 83-10p.

example, would allow him to sit specifically for one hour per day, or lift 10 pounds occasionally") (citing 20 C.F.R. § 404.1520 and 20 C.F.R. § 404.1513). The ALJ's RFC assessment must build an accurate and logical bridge between the evidence and limitations included in the RFC. Without this, the Court is left to "speculate as to the basis for the RFC limitations" which it cannot do through its limited review. *See Moore, 743 F.3d at 1128*.

Ms. O has raised other arguments about the ALJ's assessment of her impairments and her RFC limitations. The ALJ will have the opportunity to fully discuss and reevaluate the rest of Ms. O's allegations on remand. This is not to say that there are no other errors in the ALJ's decision, but the Court need not discuss them based on the issues identified in the ALJ's assessment of the above RFC limitations.

## IV. CONCLUSION

For the reasons stated above, this Court concludes that the ALJ's RFC analysis was not supported by substantial evidence because it not only failed to address specific evidence in the record but also failed to build an accurate and logical bridge between the evidence and the ALJ's conclusions regarding certain limitations. Accordingly, the Court now **REMANDS** this action to the SSA for further administrative proceedings consistent with this opinion.

**SO ORDERED** this 26th day of September 2023.

/s/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge